IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TEXAS SERENITY ACADEMY, INC., ET AL., | § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. H-12-0550 |
| SAMUEL GLAZE, ET AL., | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending is Defendants City of Houston, S. Glaze, R. Baez, and R. Irvin's Combined 12(b) Motion to Dismiss and Motion for Summary Judgment (Document No. 92). Having considered the motion, Plaintiffs' Response (Document No. 115), the Reply (Document No. 122), Plaintiffs' Response to Defendants' Reply (Document No. 125), the claims and allegations in Plaintiffs' Fifth Amended Complaint (Document No. 84), and the summary judgment evidence, it is ORDERED, for the reasons set forth below, that Defendants City of Houston, S. Glaze, R. Baez, and R. Irvin's Combined 12(b) Motion to Dismiss and Motion for Summary Judgment (Document No. 92) is GRANTED.

## I.      Background

This case centers around each side's claim to control a Texas Charter School, Texas Serenity Academy (referred to hereafter as "the School"). Defendant Don R. Johnson ("Johnson") was, at one time, the President of the Board of Directors of the School. He also appears to have initially formed the non-profit corporation, Texas Serenity Academy, Inc., to

operate the School. The School is governed by the rules and regulations promulgated and enforced by the Texas Education Agency.

The events surrounding the claims in this case took place in November 2010. Plaintiffs allege that Defendant Johnson, in November 2010, well over a year after he had voluntarily resigned from his position as President of the School Board, withdrew funds and closed accounts belonging to "Texas Serenity Academy." Plaintiffs further allege that Defendants Valton Eason, and Freddie L. Oliver, along with three Houston Police Department officers, identified as Samuel Glaze ("Glaze"), Ray Irvin ("Irvin") and Raphael Baez ("Baez"), acting at the behest of Defendant Johnson, entered the premises of both the administrative offices and the school campus, ordered the individual Plaintiffs to vacate their offices or face arrest, and evicted and suspended without pay the School's principal, Plaintiff Foreman.

In their Fifth Amended Complaint, filed on December 28, 2012 (Document No. 84), Plaintiffs assert thirteen causes of action:

(1)      Fraud;

(2)      Theft;

(3)      Intentional Infliction of Emotional Distress;

(4)      False Detention;

(5)      Invasion of Privacy;

(6)      Trespass;

(7)      Conspiracy;

(8)      Tortious Interference with Contractual Relations;

(9)      Tortious Interference with Contractual Relations between Texas Serenity Academy and the Texas Education Agency;

(10)    Official Oppression;

(11)    Breach of Fiduciary Duty;

(12)    Deprivation of Plaintiffs' Constitutional Rights; and

(13)    Conspiracy to Violate Plaintiffs' Constitutional Rights.

With the exception of the breach of fiduciary duty claim, which is alleged only against Defendant Johnson, Plaintiffs do not delineate in their pleadings against whom each of the foregoing claims is asserted. As such, except for the breach of fiduciary duty claim, the Court will assume that each of the foregoing claims was intended to be asserted against all Defendants, including Defendants City of Houston, Glaze, Irvin and Baez.

In their Combined 12(b) Motion to Dismiss and Motion for Summary Judgment, Defendant City of Houston first argues that any claims against it should be dismissed because it has not been served. Defendants Glaze, Irvin, and Baez then all argue that Plaintiffs cannot assert claims against them in their official capacities, that there is no evidence of any detention by them of any of the Plaintiffs and that they are entitled to qualified immunity on Plaintiffs' civil rights claims, and that they have official immunity on Plaintiffs' state law claims asserted against them in their individual capacities. Plaintiffs, in response to the Combined 12(b) Motion to Dismiss and Motion for Summary Judgment, have agreed to the dismissal of the City of Houston as a defendant, and have agreed "to the dismissal of the following claims against Officers Glaze, Irvin and Baez: tortious [sic] interference with contract, official oppression, fraud and punitive damages." Response (Document No. 115) at 4-5. In addition, Plaintiffs make it clear in their response that they are asserting claims against Defendants Glaze, Irvin and Baez only in their individual capacities. *Id.* (Document No. 115) at 6 ("The individual plaintiffs filed

3

suit against defendants Glaze, Irvin and Baez in their individual capacities for their willful and deliberate violations of plaintiffs' individual rights under various causes of action cognizable under Texas state law. All three individual defendants are being sued in their individual capacities based upon their individual violations of the plaintiffs' rights protected under both state and federal law."). Finally, Plaintiffs argue that there is sufficient summary judgment evidence to overcome Defendants' qualified immunity defense, and sufficient summary judgment evidence to raise a genuine issue of material fact as to whether Defendants performed their discretionary duties in good faith so as to entitle them to official immunity from Plaintiffs' state law claims.

## II.    Review Standards

### A.    Rule 12(b)(6) Failure to State a Claim

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's

liability" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S. Ct. at 1950-1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, at 1950. It is only then that the court can view the well-pleaded *facts*, "assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## B.    Summary Judgment

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden,[1] the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists that summary judgment should not be granted." *Id.*; *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).

for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513. "[F]or review of a summary judgment upholding qualified immunity, plaintiff bears the burden of showing a genuine dispute of material fact." *Tolan v. Cotton*, 713 F.3d 299, 304 (5th Cir. Tex. 2013) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)).

## III.   Discussion

### A.   City of Houston

Plaintiffs have agreed to the dismissal of the City of Houston as a Defendant in this case. *See* Response (Document No. 115) at 4-5. Given that agreement, the City of Houston, and all claims asserted against it, are DISMISSED.

6

**B.**     **Individual Defendants**

Plaintiffs, in response to Defendants' Combined 12(b) Motion to Dismiss and Motion for Summary Judgment, have agreed to dismiss, as against Glaze, Irvin and Baez, their claims of fraud, tortious interference, and official oppression. *See* Response (Document No. 115) at 4. Pursuant to that agreement, Plaintiffs' claims of fraud, tortious interference and official oppression against Defendants Glaze, Irvin and Baez are DISMISSED. That leaves, as against Defendants Glaze, Irvin and Baez, claims of: (1) theft; (2) intentional infliction of emotional distress; (3) false detention; (4) invasion of privacy; (5) trespass; (6) and civil rights violations.

**1.**     **Civil rights claims**

Plaintiffs Foreman, Jackson, Vite-Gress, Rowe and Simmons, in asserting civil rights claims under 42 U.S.C. § 1983, allege in their Fifth Amended Complaint that, "Defendant police officers, while acting in their capacities as officers with the City of Houston Police Department, deprived plaintiffs of their liberty without due process, and deprived plaintiffs of their freedom of movement. . . . Defendants Glaze, Irvin, and Baez acting in concert with the other Defendants and while acting under color of Texas law, restricted plaintiffs' liberty and their freedom, violated their rights to privacy, and unlawfully detained plaintiffs under threat of arrest." Plaintiffs' Fifth Amended Complaint (Document No. 84-1) at page 9 of 12. They also allege that, "Defendants Johnson, Oliver, and Eason participated with Glaze and Irvin, the two Houston police officers, in a conspiracy to deprive plaintiffs[] of their property, liberty and personal freedoms in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution." *Id.* at 9.

42 U.S.C. § 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress. . . . " 42 U.S.C. § 1983. "Section 1983 does not create substantive rights; rather, it merely provides a remedy for deprivations of rights established elsewhere." *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)); *see also Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). To state a claim under § 1983, a plaintiff "must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (citing *Resident Council of Allen Parkway Vill. v. U.S. Dept. of Hous. & Urban Dev.*, 980 F.2d 1043, 1050 (5th Cir. 1993)). "[B]ecause the Fourteenth Amendment protects liberty and property interests only against invasion by a state, a section 1983 plaintiff, alleging the deprivation of Due Process under the Fourteenth Amendment, must also show that state action caused his injury." *Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir. 2004) (citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999)).

When, as here, defendants are sued in a §1983 action in their personal capacity rather than their official capacity, personal immunity defenses are available. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Qualified immunity is an affirmative defense available to such defendants. *Harlow v. Fitzgerald*, 457 US. 800, 818 (1982); *see Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). In general, qualified immunity is available for public employees and officers whose duties require the exercise of

discretion, *Anderson v. Creighton*, 483 U.S. 635, 638 (1987), and whose acts fall within the scope of their discretionary authority. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 257 (5th Cir. 2005) (citing *Brooks v. George County, Miss.*, 84 F.3d 157, 164 (5th Cir.), *cert denied*, 519 U.S. 948 (1996)). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) (quoting *Harlow*, 457 U.S. at 818). If the statutory or constitutional law is clearly established, however, and the officials' conduct is shown to have violated clearly established law, claims of qualified immunity seldom prevail because a reasonably competent public official should know the law governing his conduct. *Harlow*, 457 U.S. at 818–819.

A two-part analysis is applied to qualified immunity defenses in which a court must ask: (1) whether an official's conduct violated a constitutional right of the plaintiff; and (2) whether that right was clearly established at the time of the challenged conduct.[1] *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (U.S. 2011)). "'The second prong of the qualified immunity test is [] understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the [defendant's conduct] was objectively unreasonable in the light of that then clearly established law.'" *Tolan v. Cotton*, 713 F.3d 299, 305 (5th Cir. Tex. 2013) (quoting *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998)). A right is "clearly

---

[1] In *Sacier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court held that lower courts must conduct the two-part qualified immunity analysis. More recently, however, the Supreme Court has decided that the two-part analysis in *Sacier* is not always warranted and that courts have discretion over which prong they analyze first "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

established" when "'a reasonable official would understand that what he is doing violates that right.'" *Khan*, 683 F.3d at 194 (quoting *Anderson*, 483 U.S. at 640). Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established. *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. Tex. 2011). In deciding whether qualified immunity applies, the court "'applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.'" *Cantrell v. City of Murphy*, 666 F.3d 911, 922 (5th Cir. Tex. 2012) (quoting *Freeman v. Gore*, 483 F.3d 404 (5th Cir. Tex. 2007)). Qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Tolan*, 713 F.3d at 304 (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).

The law is well settled that there is a clearly established constitutional right under the Fourth Amendment to be free from false arrest, false imprisonment, and malicious prosecution. *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 1999); *see Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. La. 1992) ("[O]ur circuit recognizes causes of action under § 1983 for false arrest, illegal detention (false imprisonment), and malicious prosecution.") "'These causes of action implicate the constitutional 'guarantees of the fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause.'" *Id.* (quoting *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988)).

In order to establish a claim for false arrest or false imprisonment, a plaintiff must prove (1) willful detention; (2) without consent; and (3) without probable cause or other legal authority. *Hart v. O'Brien*, 127 F.3d 424, 450 (5th Cir. 1997), *cert. denied*, 525 U.S. 1103 (1999). With

regard to the probable cause element, the Fifth Circuit in *Mendenhall v. Riser*, 213 F.3d 226, 231

(5th Cir. 2000), wrote:

> We are mindful of the notion that "probable cause is a fluid concept–turning on
> the assessment of probabilities in particular factual contexts–not readily, or, even
> usefully, reduced to a neat set of legal rules." *Id.* [*Illinois* v. Gates, 462 U.S] at
> 232.  Thus, we embark on a "practical, common-sense [determination] whether
> given all the circumstances" a reasonable officer could have believed "there is a
> fair probability [an individual] committed the crime charged." *Id.* at 238.

The Court further wrote:

> [W]e are compelled by our case law that clearly dictates subjective intent, motive,
> or even outright animus are irrelevant in a determination of qualified immunity
> based on arguable probable cause to arrest, just as an officer's good intent is
> irrelevant when he contravenes settled law.

*Mendenhall*, 213 F.3d at 231.

"Both unlawful detention and excessive force implicate the Fourth Amendment's

proscription against unreasonable seizures." *Peterson v. City of Fort Worth*, 588 F.3d 838, 845

(5th Cir. Tex. 2009) (citing *Terry v. Ohio*, 392 U.S. 1, 16 n.16 (1968)). "[W]henever a police

officer accosts an individual and restrains his freedom to walk away, he has 'seized' that

person." *Terry*, 392 U.S. at 16 n.16 (1968). Detention requires "either physical force . . . or,

where that is absent, submission to the assertion of authority." *California v. Hodari D.*, 499 U.S.

621, 626 (1991) (emphasis omitted). "[T]here is a show of authority by an officer if, but only if,

a reasonable person believes he is not free to leave." *United States v. Valdiosera-Godinez*, 932

F.2d 1093, 1099 n. 2 (5th Cir. 1991), *cert. denied*, 508 U.S. 921, 113 (1993). A person is free to

leave, and thus not detained, when ordered to vacate an area solely under threat of arrest. *See*

*Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. Tex. 1996) (finding that plaintiff was not

detained when told he would be arrested if he did *not* leave the premises of his terminated

employment).

Here, Plaintiffs' civil rights claim is based on allegations that Glaze, Irvin and Baez violated their Fourth Amendment rights by "forcibly" ordering "the individual plaintiffs to vacate the school's administrative offices or risk being arrested and taken to jail," by forcing them "out of their offices" and forcing to "leave some of their personal belongings," by "seizing control of the [school] campus," and by entering Plaintiff Foreman's office and temporarily detaining her against her will, threatening "to have her teaching certification, principal certification and superintendent certification revoked and/or sanctioned by the State Board of Educator Certification for refusing to leave the premises," and escorting her out the school building. In response to Defendants' Motion for Summary Judgment, Plaintiffs re-state their civil rights claim as being based on Defendants' unlawful threats of arrest, Defendants' wrongful detention of Plaintiffs in their offices, and Defendants' denial of Plaintiffs' freedom of movement by threat of arrest. Response (Document No. 115) at 7.

Based on Plaintiffs' allegations, and the summary judgment evidence in the record, Defendants Glaze, Irvin and Baez are entitled to qualified immunity on Plaintiffs' civil rights claims under §§ 1983, 1985. In *Laughlin*, the Fifth Circuit concluded, on somewhat similar facts, that there is no detention, much less unlawful detention, if an individual is free to leave despite being threatened with arrest. Here, Plaintiffs' civil rights claims are based on the threats of arrest by Defendants Glaze, Irvin and Baez if they did not vacate their offices at the administrative building and the School. As in *Laughlin*, such threats do not constitute detention.[2]

---

[2] The only summary judgment evidence in the record that any of the Individual Defendants were not free to leave comes from Plaintiff Michelle Foreman, who attested in an affidavit, and at her deposition, that officers blocked her office doorway, and did not allow her to leave until she had packed her belongings. Affidavit of Foreman (Document No. 117-20); Foreman Deposition (Document No. 116-4) at 38-39. Foreman also testified however, that she did leave her office,

Given *Laughlin* and the absence of any Fifth Circuit or Supreme Court authority that Defendants' conduct constituted unlawful detention,[3] Defendants Glaze, Irvin and Baez did not violate a constitutional right that was *clearly established* at the time.  On that basis alone, *see Pearson*, 555 U.S. at 243-44; *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2740 (2012), Defendants Glaze, Irvin and Baez are entitled to qualified immunity from the civil rights claims alleged by Plaintiffs under § 1983.

Similarly, Defendants Glaze, Irvin and Baez are entitled to summary judgment on Plaintiffs' claim that they entered into a conspiracy to violate Plaintiffs' constitutional rights.  To prevail on a conspiracy claim under § 1983, a plaintiff must have evidence of an agreement to commit an illegal or unconstitutional act.  *Rodriguez v. Neeley*, 169 F.3d 220, 222 (5th Cir. 1999); *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008).  Here, there is no such summary judgment evidence.  Summary judgment is therefore also warranted on the conspiracy claim under § 1983.

---

while in the process of packing her belongings and without informing the officers of where she was going, and did leave her office with her belongings.  Foreman Deposition (Document No. 116-4) at 44.  The substance of Foreman's deposition testimony also makes it clear that the Defendants were not attempting to keep her in her office, but instead were attempting to persuade her to pack up her personal belongings and leave.  Foreman's testimony and attestations, when taken in context and as whole, do not evidence that she was detained by Defendants Glaze, Irvin and Baez.

[3] Plaintiffs cite to and rely on the case of *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273 (5th Cir. 2002) for their argument that their "eviction" by Defedants Glaze, Irvin and Baez from their offices constituted an unlawful detention.  *Cozzo*, however, is not like this case.  In *Cozzo*, law enforcement officers evicted the plaintiff from her residence, citing terms of a Temporary Restraining Order that did not require her eviction or removal.  Cozzo filed suit under § 1983 for the unlawful seizure of her residence – not for unlawful detention.  Because there was nothing in the TRO that required Cozzo's eviction, the Fifth Circuit concluded that the officers were not entitled to qualified immunity.  Here, in contrast, Plaintiffs claims are for unlawful detention – claims that fall almost squarely within the facts and the legal analysis in *Laughlin*.  While *Cozzo* may lend some support to Plaintiffs' § 1983 claims, the circumstances and decision in *Laughlin* defeats Plaintiffs' § 1983 claims and makes available to Defendants Glaze, Irvin and Baez the defense of qualified immunity.

13

2.      **State law claims**

Plaintiffs allege five state law claims against Defendants Glaze, Irvin, and Baez, for (1) theft, (2) intentional infliction of emotional distress; (3) false detention; (4) invasion of privacy; and (5) trespass.  In response to those state law claims, Defendants Glaze, Irvin and Baez have asserted the defense of official immunity, which provides government employees with immunity from state law claims arising from the performance of their "discretionary duties in good faith while acting within the scope of [their] authority."  Defendants' Motion (Document No. 92) at 20.  According to Defendants, the summary judgment evidence establishes that they were performing their duty to maintain the peace in good faith and are, as a result, entitled to official immunity.

In response to Defendants' official immunity defense and the summary judgment evidence submitted by Defendants in support thereof, Plaintiffs argue, without any reference to any controverting summary judgment evidence, that Defendants are not entitled to official immunity because: (1) they failed to properly vet the job prior to agreeing to work for the other Defendants; (2) they failed to obtain a permit for the extra work, as required by Houston Police Department policy; and (3) the extra job at issue is not the type of extra employment that is allowed by Houston Police Department policy.  In addition, Plaintiffs maintain that Defendants had no legal basis, and no legal documents, that would have given them the authority to order Plaintiffs to leave their offices.

Under Texas law, official immunity is an affirmative defense to state law claims that shields public officials, including law enforcement personnel, from personal liability, encouraging them "to vigorously perform their official duties." *Telthorster v. Tennell*, 92 S.W.3d

14

457, 460 (Tex. 2002); *see Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 422 (Tex. 2004). Official immunity provides protection to public officials from suits arising from performance of their "(1) discretionary duties (2) in good faith (3) within the scope of their employment." *Ballantyne*, 144 S.W.3d at 422. On a motion for summary judgment based on the defense of official immunity, the public official has the burden to establish each of these elements. *Telthorster*, 92 S.W.3d at 461. As to the first element, a public official must be performing a discretionary, rather than a ministerial, act. A ministerial act is one in which "'the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Ballantyne*, 144 S.W.3d at 422 (quoting *Comm'r of Gen. Land Office v. Smith*, 5 Tex. 471, 479 (Tex. 1849)). Conversely, a discretionary act is one which involves personal deliberation, decision, and judgment. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). As for the second element, the good faith standard is based solely on the objective legal reasonableness of the official's conduct, "without regard to the officer's subjective state of mind." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997) (citing *Chambers*, 883 S.W.2d at 656). "This test of good faith does not inquire into 'what a reasonable person *would have done*,' but into 'what a reasonable [person] *could have believed*.'" *Ballantyne*, 144 S.W.3d at 426 (quoting *Telthorster*, 92 S.W.3d at 465). As for the third element, public officials act within the scope of their authority when they "are discharging the duties generally assigned to them." *Ballantyne*, 144 S.W.3d at 422 (citing *Chambers*, 883 S.W.2d at 658).

Having considered the summary judgment evidence, the Court concludes that Defendants Glaze, Irvin and Baez have submitted summary judgment evidence, uncontroverted by Plaintiffs,

as to each of the elements of their official immunity defenses.  Defendants Glaze, Irvin and Baez were hired to help "keep the peace" during and in connection with the termination of certain employees.  Such a task requires the police officers to use their discretion in determining the force necessary to preserve the peace. *See* Affidavit of Sergeant James Turner (Document No. 117-12) at 2 (stating that police officers are to ensure public safety and enforce applicable criminal law during employee termination).  In addition, while Defendants Glaze, Irvin and Baez were performing an extra duty job, Houston Police Department General Orders ("G.O.") authorize members of the police force to obtain extra employment pursuant to department regulations. *Id.* at 1.  In addition, the type of work at issue – keeping the peace during an employment termination – is generally allowed.  *Id.* at 2 ("Houston [p]olice [o]fficers have (in the past) and currently are approved to provide security in situations where employers are terminating employees.").

As to the "good faith" element, the summary judgment evidence shows that Defendants Glaze, Irvin and Baez were hired by Defendant Oliver to keep the peace during the termination of certain employees at the Texas Serenity Academy administration and school buildings. Affidavit of Glaze (Document No. 117-13) at 1–3.  No force was used by Defendants Glaze, Irvin or Baez; they never touched any of the employees and never brandished their weapons or handcuffs; and they made their presence known in order to ensure that the termination of Plaintiffs was peaceful.  Although there is disputed summary judgment evidence about whether Defendants Glaze, Irvin and Baez threatened Plaintiffs with arrest if they did not leave the premises, *compare* Affidavit of Hagmon Simmons (Document No. 117-10) at 2; Affidavit of Michelle Foreman (Document No. 117-20) at 3; Affidavit of Larry Jenkins (Document No. 117-

16

24) at 1, *with* Affidavit of Glaze (Document No. 117-14 at 3); Affidavit of Baez (Document No. 117-16) at 2; Affidavit of Irvin (Document No. 117-18) at 3, such threats, if made, were objectively reasonable as furthering the officers' goal of maintaining the peace.  Indeed, the summary judgment evidence shows that Plaintiffs peacefully, and without the use of force, left the premises.  The summary judgment evidence in the record supports Defendants' asserted defense of official immunity.

Plaintiffs attempt to controvert the official immunity showing by pointing out that Defendants were required to obtain a permit for the extra-duty work at issue, but failed to do so. Affidavit of Glaze (Document No. 117-14) at 3; Affidavit of Baez (Document No. 117-16) at 2; City of Houston Investigation (Document No. 117-28) at 1.  That procedural deficiency, however, does not, in and of itself, place the officers' conduct outside of duties "generally assigned to them."  In addition, the absence of a permit does not controvert the summary judgment evidence in the record that Defendants Glaze, Irvin and Baez were acting in good faith. *See* Affidavit of Glaze (Document No. 117-14) at 3.

Because there is summary judgment evidence which supports the official immunity defenses asserted by Defendants Glaze, Irvin and Baez, and because Plaintiffs have not come forth with any summary judgment evidence that raises a genuine issue of material fact on any of the elements of Defendants' official immunity defenses, including the objective good faith element, Defendants Glaze, Irvin and Baez have official immunity from the state law claims asserted against them by Plaintiffs.  In addition, summary judgment is warranted on those state law claims because there is no summary judgment evidence in the record to support the essential elements of the claims.

With respect to the civil theft claim, there is no summary judgment evidence that Defendants Glaze, Irvin or Baez exercised dominion or control over any property of any of the Plaintiffs, or appropriated any property of the Plaintiffs with intent to deprive the Plaintiffs of that property. *See Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir 2009) (Under Texas law, a plaintiff asserting a claim of unlawful conversion of personal property "must prove that: (1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused."); *Cluck v. Mecom*, 401 S.W.3d 110, 117 (Tex.App.–Houston [14 Dist.]  2011) (Under the Texas Theft Liability Act, "the plaintiff must prove the defendant unlawfully appropriated the plaintiff's property with intent to deprive the plaintiff of the property and the plaintiff sustained damages."). While there is summary judgment evidence that other Defendants, including Defendants Johnson, Oliver and Eason exercised dominion and control over Texas Serenity Academy's bank accounts and records, there no summary judgment evidence that Defendants Glaze, Irvin or Baez exerted *any* dominion or control over *any* property belonging to Plaintiffs.

With respect to the intentional infliction of emotional distress claim, there is no summary judgment evidence that the conduct of Defendants Glaze, Irvin or Baez was extreme or outrageous, or that any of the individual Plaintiffs suffered severe emotional distress as a result of the conduct of Defendants Glaze, Irvin and Baez. *See Dworschak v. Transocean Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 197 (Tex.App.–Houston [14 Dist.] 2011) ("There are four elements to an intentional-infliction-of-emotional-distress claim: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the

defendant's actions caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was severe. *Tex. Farm Bureau Mut. Ins. Co. v. Sears,* 84 S.W.3d 604, 610 (Tex. 2002). Extreme and outrageous behavior by the defendant must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993))").

With respect to the claim of "false detention," Texas does not recognize such a state law claim. Instead, claims of false or unlawful detention are considered under the purview of false imprisonment claims, and false imprisonment claims require proof of "(1) willful detention, (2) without consent, and (3) without authority of law." *Davis v. Prosperity Bank*, 383 S.W.3d 795, 799 (Tex.App.–Houston [14 Dist.] 2012). Here, however, as set forth above, there is no summary judgment evidence that there was a detention of any of the Plaintiffs. Instead, Plaintiffs were allegedly ordered to vacate the premises under the threat of arrest, but were not arrested or otherwise taken into custody. Such conduct does not, under *Laughlin*, constitute detention. In addition, under Texas law, such conduct does not constitute detention. *See Safeway Stores, Inc. v. Amburn*, 388 S.W.2d 443, 447 (Tex. App.—Ft. Worth 1965) (where plaintiff is free to leave, threats of arrest and imprisonment, unaccompanied by either the use of force or the threatened use of force, are insufficient to constitute detention for purposes of a false imprisonment claim); *In re Hall*, 286 S.W.3d 925, 929 (Tex. 2009) ("'Detention'" is commonly defined as either (1) "the act or fact of detaining or holding back; *esp:* a holding in custody" or (2) "the state of being detained; *esp:* a period of temporary custody prior to disposition by a court." WEBSTER'S NEW COLLEGIATE DICTIONARY 307 (1981)"); *see*

*also, e.g., Rerich v. Lowe's Home Centers, Inc.*, No. 01-05-01165-CV, 2007 WL 1412881 (Tex. App.-- Houston [1st Dist.] 2007 (affirming summary judgment on plaintiff's false imprisonment claim where there was no mention of violence, no evidence that the plaintiff was physically prevented from leaving interview, and evidence that the plaintiff was free to leave the interview but only remained out of fear of being arrested).

With respect to the invasion of privacy claim, there is no summary judgment evidence that Defendants Glaze, Irvin or Baez intruded *upon the private affairs* of any of the Plaintiffs. *See Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 48 (Tex.App.–Corpus Christi 2001) ("The elements of invasion of privacy by intrusion are: (1) intentionally intruding (2) upon the solitude of another or his private affairs (3) which is highly offensive to a reasonable person. . . . Additionally, courts have required that the intrusion be unreasonable, unjustified, or unwarranted."). While there is summary judgment evidence that Defendants Glaze, Irvin and Baez entered the premises of the Texas Serenity Academy administrative offices, and the Texas Serenity Academy school campus offices, including the offices of Plaintiffs Simmons, Jenkins, Rowe, and Foreman, this does not constitute summary judgment evidence that Defendants intruded on any of the "private" affairs of any of the Plaintiffs.

Finally, with respect to the trespass claim, which has only been alleged by Plaintiff Texas Serenity Academy against Defendants Glaze, Irvin and Baez, such a claim fails because there is no summary judgment evidence that any entry onto the premises of Texas Serenity Academy by Defendants Glaze, Irvin and Baez *caused* Texas Serenity Academy any injury. *See Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.,* 343 S.W.3d 875, 882 (Tex.App.–El Paso 2011) ("To recover damages for trespass to real property, a plaintiff must prove that (1) the plaintiff owns or

has a lawful right to possess real property, (2) the defendant entered the plaintiff's land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury to the plaintiff."). While the summary judgment evidence shows that Glaze, Irvin and Baez entered the administrative and school premises without the consent of Plaintiffs, they did have the consent of Don R. Johnson, who purported to have an ownership and/or controlling interest in Texas Serenity Academy. In addition, the summary judgment evidence shows that all those who were asked to leave the administrative and school premises returned to their positions within days. Given the real, underlying dispute between the parties as to the rightful ownership and control of Texas Serenity Academy, it cannot be said that the actions of Defendants Glaze, Irvin and Baez constituted a trespass to Texas Serenity Academy's real property that *caused* Texas Serenity Academy any injury.

## IV.    Conclusion and Order

Based on the foregoing, the agreement of Plaintiffs to the dismissal of the City of Houston and the dismissal of certain state law claims, Plaintiffs' representations that they have not asserted any claims against Defendants Glaze, Irvin and Baez in their official capacities, the conclusion that Defendants Glaze, Irvin and Baez have qualified immunity with respect to the federal civil rights claims asserted against them by Plaintiffs, and the conclusion that Defendants Glaze, Irvin and Beaz have official immunity on the state law claims asserted against them in their individual capacities and there is no summary judgment evidence in the record to support the essential elements of those state law claims, it is

ORDERED that Defendants City of Houston, S. Glaze, R. Baez, and R. Irvin's Combined 12(b) Motion to Dismiss and Motion for Summary Judgment (Document No. 92) is GRANTED and all Plaintiffs' claims against Defendants City of Houston, S. Glaze, R. Irvin and R. Baez are DISMISSED WITH PREJUDICE.

Signed at Houston, this _15th_ day of August, 2013.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE